**Amador Aparicio PINA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–99–00082–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted Nov. 21, 2000.

Decided Jan. 17, 2001.

Discretionary Review Refused
March 21, 2001.

Michael L. Skotnik, Bonham, for appellant.

James Moss, Special Pros., Bonham, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Chief Justice CORNELIUS.

Amador Aparicio Pina appeals his conviction for capital murder. He was convicted by a jury. Because the State did not seek the death penalty, the trial court assessed Pina's punishment at life imprisonment.

Pina raises six issues on appeal. He contends that (1) oral statements he made were admitted at trial in violation of TEX. CODE CRIM. PROC. ANN. art. 38.22 (Vernon 1979 & Supp.2001); (2) the trial court erred in allowing a witness to testify about his alleged confession to his mother; (3) a letter he purportedly wrote was improperly admitted in evidence; (4) testimony about his attempt to escape was improperly allowed; (5) the prosecutor made an improper comment on his failure to testify; and (6) the trial court erred in failing to grant a mistrial when prospective jurors saw Pina in handcuffs.

Although the sufficiency of the evidence is not challenged, an understanding of the facts is helpful in considering the issues on appeal. On October 20, 1997, Monte Fredell Renshaw, the victim, was living at the Ranch Motel in Bonham, Texas. Renshaw was a seventy-nine-year-old truck driver who moved to Bonham after he retired to care for his aging sister. His family became concerned when he did not attend his sister's funeral on October 21, and failed to respond to their phone calls to his motel room. On October 21, Renshaw's nephew, John Renshaw, approached the manager of the motel and expressed his concern for his uncle. John Renshaw, the manager, and a friend of the manager then went to Monte Renshaw's room, Room 17. When they arrived, the door was unlocked, and upon entering, they discovered Monte Renshaw's body. His hands were tied with electrical cord and his head was covered with a pair of pants or some other piece of cloth.

An autopsy revealed that Renshaw died of multiple blunt and sharp force injuries. His throat had been cut and he had been strangled. He had massive rib fractures on his right side. The testifying forensic pathologist concluded that Renshaw died as the result of a homicide.

Investigation of the crime scene revealed a flashlight, or a piece of a flashlight, under Renshaw's body. In addition to the blood found at the crime scene itself, blood was also discovered on the window sill, door, and sidewalk leading to Renshaw's room at the motel. No identifiable finger prints were found at the crime scene. Detective Kelly Warren, the investigator for the Bonham Police Department, testified that no identifiable prints were found because the assailant wore gloves. One latent print found on a can of hairspray in Room 17 did not match Pina. Hair samples taken from the room and Renshaw's car were found to be microscopically similar to those of Pina and Renshaw,

but samples were also found that were different from either the victim's or Pina's. Renshaw's car was discovered in Paris, Texas. Blood stains were found on the driver's seat belt, steering wheel, and door panel.

Kenneth Walker was staying in Room 19 of the Ranch Motel at the time of the incident in question. On October 17, 1997, Walker and Pina discussed a possible transaction where they planned to go to Mexico, buy cocaine and marihuana, and return to the area and sell it. During these discussions, Walker testified that he and Pina discussed getting a vehicle with which to make the trip. Walker testified that Pina told him he would steal Renshaw's car from the motel. Pina told Walker that, to get the keys, he planned to tie Renshaw up with duct tape, and if he made any noise, he would slit his throat. Walker testified that during the initial conversation, he did not take Pina seriously. Walker further testified that in the very early morning of October 20, 1997, Pina came to his room at the motel and made a phone call. Walker decided to leave the motel that day without participating in any activities with Pina. Pina gave Walker a knife during their conversation, which Walker turned over to authorities and which was introduced into evidence by the State.

First, Pina contends that the trial court erred in admitting the testimony of Detective Warren regarding oral statements made by Pina that allegedly were admitted in violation of Article 38.22, § 3(a), which states in part as follows:

(a) No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless:

(1) an electronic recording, which may include motion picture, video tape, or other visual recording, is made of the statement....

TEX.CODE CRIM. PROC. ANN. art. 38.22, § 3(a) (Vernon Supp.2001). Pina was taken into custody in Jacksonville, Texas, by Detectives Warren and Bridges, and returned to Bonham. Warren testified that he did not give Pina *Miranda*[1] warnings in Jacksonville and made no statement en route to Bonham, but he did give such warnings to Pina after returning to Bonham. He testified he advised Pina, both orally and in writing (on a paper signed by Pina), of his right to remain silent, his right to speak with a lawyer and have the lawyer present during questioning, and his right to have a lawyer appointed to represent him before any questioning if he could not afford to hire one, that he could exercise those rights at any time, that he did not have to answer any questions, and that he could terminate the interview at any time. Warren testified that he typed out Pina's oral statement as Pina made it, and that Pina signed the statement in front of Detective Bridges and himself.

Detective Warren was questioned by the prosecutor about Pina's statement. Warren testified to oral statements Pina made in response to questions Warren posed to him about his written statement, and the fact that Pina made no response or gave no satisfactory answer to questions posed by Warren about alleged inconsistencies or improbabilities in Pina's written statement. Pina contends that these responses or lack of responses were themselves oral statements, which Article 38.22, § 3(a) required to be electronically recorded.

The Court of Criminal Appeals has strictly construed Article 38.22, § 3(a)(5), which requires that the defendant's attorney be given a true, accurate, and complete copy of any electronic recording of the defendant's statement "not later that the 20th day before the date of the proceeding." In *Tigner v. State*, 928 S.W.2d 540 (Tex.Crim.App.1996), the Court of Criminal Appeals held that, in accordance with the required strict construction mandates, the term "proceeding" as used in

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

the Section 3(a)(5) referred to voir dire as well as the trial on the merits, and that the State's failure to provide the required copy twenty days before voir dire made the defendant's statement inadmissible. Referring to Article 38 .22, § 3(e), the Court stated:

> Such unambiguous direction indicates the Legislature's intent that this Court strictly advance its purpose to declare inadmissible all custodial statements not provided to defense counsel with ample time to effectively challenge their admissibility. The purpose of Article 38.22 § 3(a)(5) would be largely defeated where defense counsel did not have a copy of a defendant's electronically-recorded statement prior to voir dire. Only by interpreting the term "proceeding" to include voir dire is the legislative purpose advanced.

*Tigner v. State,* 928 S.W.2d at 546.

We must determine, then, whether Pina's responses to Detective Warren constitute statements within the meaning of Article 38.22, § 3(a)(1). In the *Tigner* case, the Court's opinion used Black's Law Dictionary's definition of "proceeding" as the starting point of its determination. *Tigner v. State,* 928 S.W.2d at 544. If we do likewise, we find "statement" defined in two relevant ways for our purposes: (1) "[a] verbal assertion or nonverbal conduct intended as an assertion," and (2) "[a]n account of a person's knowledge of a crime, taken by the police pursuant to their investigation of the offense." BLACK'S LAW DICTIONARY 1416 (7th ed.1999). The first definition has been adopted in TEX.R. EVID. 801(a). *See Ly v. State,* 908 S.W.2d 598, 600 (Tex.App.—Houston [1st Dist.] 1995, no pet.).

■ It is clear that Warren's rendition of Pina's verbal assertions, given in response to Warren's questions to Pina about inconsistencies in his written statement, fit these definitions. It is equally clear that Pina's lack of response or unsatisfactory responses to Warren's questions about Pina's written statement qualify as "nonverbal conduct intended as an assertion," thus fitting the definition of "statements." Further, both Pina's verbal assertions and nonverbal conduct intended as assertions represent an account of a person's knowledge of a crime, taken by police pursuant to their investigation of the offense. Warren's discussions with Pina were not electronically recorded or videotaped. Defense counsel did not have the opportunity to review the statements in advance of trial either as to their content or with regard to possible challenges to their admissibility. Further, the jury was never given an opportunity to consider Warren's questions or Pina's alleged responses or lack of responses.

We conclude that Pina's responses or lack of responses to Detective Warren's questions were "statements" as contemplated in Article 38.22, § 3(a)(1), whose admissibility required that they be electronically recorded and that copies be timely provided to defense counsel before trial. While appropriate *Miranda* warnings were given, providing Pina with all required constitutional due process protection, he was not provided with the required greater protection afforded by Article 38.22. *See Falcetta v. State,* 991 S.W.2d 295, 297 (Tex.App.—Texarkana 1999, no pet.). We find that the admission of Detective Warren's testimony about the contents of these statements was error.

The State argues that Pina failed to preserve error in this regard because he failed to object to the complained-of testimony on the grounds now raised on appeal, and that in any event any error was harmless because of overwhelming evidence in support of Pina's guilt.

■ Warren testified that he discussed with Pina various parts of his written statement. On several occasions, Warren testified to statements made by Pina in response to his questions. Defense counsel objected to some of this testimony on grounds of hearsay, lack of predicate, and speculation, but did not object on

grounds that it violated Article 38.22. Later, defense counsel objected to one of these questions on Article 38.22 grounds, but that objection was not timely. In order to complain of an error in admitting evidence offered by the State, the defendant must preserve his claimed error by timely and properly objecting and obtaining a ruling from the court on the objection. The defendant must state specifically the basis for the objection unless the particular ground is apparent from the context. *Ethington v. State,* 819 S.W.2d 854, 858 (Tex.Crim.App.1991). The objection must be made at the earliest opportunity, and the point of error on appeal must correspond to the objection raised at trial. *Martinez v. State,* 867 S.W.2d 30, 35 (Tex. Crim.App.1993). Defense counsel did not object to Warren's earlier testimony on the Article 38.22 grounds that are raised in this appeal. This failure to object at the first opportunity constitutes a waiver of the error.

■ TEX.R.APP. P. 44.2 provides that nonconstitutional error that does not affect substantial rights of the defendant must be disregarded. Error cannot be predicated on a trial court's ruling admitting or excluding evidence unless a substantial right of a party is affected. *Ethington v. State,* 819 S.W.2d at 858. The alleged error here is not one of constitutional dimension. Therefore, we must determine whether Pina's substantial rights were affected. A substantial right is affected when the error had a substantial and injurious effect or influence on the jury's verdict. *Hambrick v. State,* 11 S.W.3d 241, 243 (Tex.App.— Texarkana 1999, no pet.). We conclude that the error here did not affect Pina's substantial rights. Other substantial parts of Pina's statement had already been admitted without objection. The particular question, as to Pina's reasons for not calling the police or reporting the incident to the motel manager, does not reveal any particular incriminating evidence. Pina merely told Detective Warren that he tried to dial out (dial "9") on the motel room

telephone and was unable to do so. In view of the other evidence presented, we cannot find that this particular statement made by Pina, even if improperly admitted, had a substantial influence in determining the jury's verdict.

■ Pina also contends that the trial court erred in allowing the jury to hear the testimony of Belen Merqeado. Pina referred to Merqeado as his "sister." She was living with Pina's mother on October 21, 1997. She testified, through an interpreter, that Pina arrived at the house early that morning, that he was wearing bloody clothing, and that he told his mother that he was in trouble, that he had killed a man in Bonham. Pina contends the trial court abused its discretion in admitting Merqeado's testimony and overruling Pina's hearsay objections.

■ TEX.R. EVID. 104(a) states that preliminary questions concerning the admissibility of evidence shall be determined by the trial court. Such determinations are committed to the trial court's discretion. The trial court's ruling on the admission or exclusion of evidence will not be disturbed unless the record clearly demonstrates an abuse of such discretion. *De Leon v. State,* 985 S.W.2d 117, 119 (Tex. App.—San Antonio 1998, no pet.); *de la Garza v.. State,* 898 S.W.2d 376, 378 (Tex. App.—San Antonio 1995, no pet.). To demonstrate an abuse of discretion, the appellant must show that the trial court acted arbitrarily and without reference to guiding principles. *Ramirez v. State,* 973 S.W.2d 388, 391 (Tex.App.—El Paso 1998, no pet.).

The record here demonstrates that the trial court recognized the difficulties that would be encountered with this testimony. The witness understood little English, the testimony would have to be elicited by an interpreter, and the witness would be testifying against her own relative. Merqeado's testimony was contradictory at times, e.g., she testified both that she heard Pina tell his mother that he had killed a man

and was trying to escape, and also that she was told this by her mother and that she did not hear Pina tell his mother anything. She also testified differently as to whether Pina was wearing clean or bloody clothing when he arrived at the house that morning. In its brief, the State suggests that the inconsistencies in the testimony could be due to the language barrier and Merqeado's lack of understanding of the questions.

We have carefully reviewed the record as it pertains to this issue. We cannot find that the trial court abused its discretion in admitting this evidence. The witness provided significant evidence pertaining to the facts of the case. Her credibility was a matter for the jury to determine, and defense counsel had ample opportunity to cross-examine her.

 Pina also challenges the trial court's admitting into evidence State's Exhibit 141, a letter written in the Spanish language from Pina to someone named Pascual, alleged to be Merqeado's boyfriend. Merqeado testified that the letter in question had to be read to her because she cannot read or write. As previously noted, Merqeado testified that Pina had visited on October 21, 1997, and she had heard him tell her mother of his killing of the elderly man in Bonham. She visited Pina in the jail at Clarksville, before the trial, and she testified that Pina talked to her about helping him escape. The letter, addressed to Pascual, was translated orally for the jury as follows:

> For Pascual. I'm writing to you this letter in order to tell you just how I feel about you. Think about it. All the time I thought that we were good friends. Also I thought that some day you would help me out but I am seeing now that I was wrong because you have let me down, as always. A good man. Do whatever you want to. Thanks a lot. Remember one thing, I am never going to forget you because I don't forget those things. I gave you a chance and time but you didn't care at all. That's

okay. Fine. One thing I want to say to you, get away somewhere where I will not find you when I get out. You're in deep with me. Don't help me out. And any way I'm going to get out soon. Pay close attention to what I say to you and record it. I don't want to find you any place. I will look for you wherever you are. That's the way you wanted it. Over there I begged you. Over there I wrote you several letters but you didn't care at all. In other words, I am serious with you and I'm telling you that your days are numbered. Record it very well in your head. I swear to you. I promise it to you. Enjoy your last days.

The State says this letter was admissible for two reasons: (1) It demonstrates the state of mind of the witness Merqueada. She was related to Pina. She testified she interpreted the letter as a threat to her because of her failure to assist Pina. (2) The letter informed the jury of Pina's alleged plot or attempt to escape, and escape or attempted escape is always relevant as a quasi-admission of guilt.

 All facts tending to show mental bias, interest, prejudice, or any other motive or mental state or status of a witness, which fairly considered and construed might even remotely tend to affect the witness's credibility, should be admitted. It is always permissible, if it can be shown by competent evidence, to prove the hostile attitude of any witness toward any party or any cause before the court. Such evidence is admissible in order to determine the credibility of the witness and the weight to be given to her testimony. *Hinojosa v. State,* 788 S.W.2d 594, 600 (Tex. App.—Corpus Christi 1990, pet. ref'd); *see also Cantu v. State,* 939 S.W.2d 627 (Tex. Crim.App.1997). We find no error in admitting the letter for the jury's consideration.

Next, Pina contends the trial court erred in allowing the State to present evidence of unadjudicated offenses consisting of his

possession of implements of escape and his attempted escape while awaiting trial.

The testimony about the escape attempt came from Armado Sanchez, a prisoner at the Fannin County jail, and Donald Walker, a Fannin County deputy sheriff. Sanchez was initially questioned outside the presence of the jury. After this initial examination, the trial court found Pina guilty of possession of implements of escape, a second degree felony, and permitted the State to present Sanchez's testimony to the jury.

Armado Sanchez was confined in the Fannin County jail on a charge of delivery of a controlled substance. He also had been charged with similar offenses in other counties. Pina spoke to Sanchez about his case while in jail. Sanchez testified that Pina was concerned that the State now had enough evidence against him and that he (Pina) was going to avoid trial by trying to escape. Sanchez testified that Pina intended to take a guard's car while being taken to see the doctor. Sanchez identified a simulated gun made from the cover of a Bible, which he said had been in Pina's possession. He also identified a sharpened metal rod and a sharpened toothbrush. He said Pina intended to use the replica of the gun to take the car from the guard, and to use the other implements if necessary. One of the guards had left a key ring in Pina's possession, and Pina had managed to secure the handcuff key from the key ring. He intended to use this to get his hands free. Sanchez testified that Pina put the key inside of a cloth cross he wore around his neck. These items were all observed in Pina's cell before May 5, 1998, for varying lengths of time. On May 5, 1998, Sanchez saw Pina carry these items with him when he left the cell. At that time, Sanchez informed the authorities. Sanchez also testified that Pina told him the story that a black man had forced Pina to kill another man was not true. Donald Walker was the officer assigned to take Pina to the doctor's office on May 5,

1998. After they arrived at the doctor's office, Walker was notified by his supervisor that Pina might have a sharp object and a handcuff key in his possession. Walker took Pina into one of the examining rooms and searched him. He discovered that Pina was wearing his street clothes under his jail jumpsuit. Walker confronted Pina, and Pina handed him the cloth cross around his neck.[2] Walker testified that Pina did not have a pistol or sharp objects on his person when he was searched. Walker then strip-searched Pina and handcuffed him. Pina had been left alone for fifteen to twenty minutes before being confronted by Walker, but did not try to leave.

Evidence of flight or escape is admissible as tending to prove guilt. *Walker v. State,* 588 S.W.2d 920, 924 (Tex. Crim.App. [Panel Op.] 1979); *Hunter v. State,* 530 S.W.2d 573, 575 (Tex.Crim.App. 1975); *Hodge v. State,* 506 S.W.2d 870, 873 (Tex.Crim.App.1973) (opinion on rehearing); *Goff v. State,* 681 S.W.2d 619, 623 (Tex.App.—Houston [14th Dist.] 1983), *aff'd,* 720 S.W.2d 94 (Tex.Crim.App.1986). It is considered a quasi-admission of guilt. *Cawley v. State,* 166 Tex.Crim. 37, 310 S.W.2d 340, 342 (1957). In order to exclude such evidence, a defendant must show affirmatively that the escape is directly connected to some transaction not connected with the offense on trial. *Hodge v. State,* 506 S.W.2d at 873.

The evidence shows that Pina's confinement at the time of the incidents related above was a direct result of the charges in this case. Certainly, he has produced no evidence that his activities related to some other, unrelated circumstance. In his brief, he argues there was no proof of either an escape or an attempt to escape. He argues:

> A plan to escape which is not acted upon or which is abandoned does not constitute consciousness of guilt of the crime charged and is not a quasi-admission of

---

2. The record does not indicate if the cloth cross contained the handcuff key.

guilt. Our society has not yet reached the point where we prosecute prisoners for dreams of freedom.

Thus, we must determine whether Pina's activities noted above were mere dreams of freedom or constituted attempted escape.

■ The criminal act of escape is defined as escape from custody when the person is under arrest for, charged with, or convicted of an offense. TEX. PEN.CODE ANN. § 38.06(a)(1) (Vernon Supp.2001). Criminal attempt occurs when the person, with specific intent to commit the offense, does an act amounting to more than mere preparation that tends, but fails, to effect the commission of the offense intended. TEX. PEN.CODE ANN. § 15.01(a) (Vernon 1994). There is an imaginary line that separates mere preparatory conduct from acts that tend to effect commission of the offense. Where the line is drawn depends on the nature of the crime and must be decided on a case-by-case basis. *See Sorce v. State,* 736 S.W.2d 851, 857 (Tex.App.—Houston [14th Dist.] 1987, pet. ref'd).

Although not controlling, we find persuasive the reasoning of a United States Court of Appeals in a case involving an enhanced sentence under the United States Sentencing Guidelines for appellants attempting to escape:

> Further, in light of the evidence of Ishmeal Badru's activities during his incarceration pending sentencing in preparing for his escape while visiting the hospital on a feigned illness, including enlisting the aid of another prisoner and obtaining a handcuff key from a prison guard and a map of the hospital, the district court properly concluded that his actions involved more than mere planning and were sufficient to come within the definition of "attempting to escape" under the obstruction of justice provisions of the Sentencing Guidelines.

*United States v. Badru,* 97 F.3d 1471, 1479 (D.C.Cir.1996).

■ Pina argues that because he did not try to flee while he was left alone at the doctor's office, the evidence is conclusive that he abandoned his attempt to escape, and so the most he did was to prepare for an escape. We disagree. Although this evidence could be considered an abandonment of his escape plan, the jury could also have reasonably believed it showed only a decision by Pina to delay the escape to a more propitious time, and thus was a mere temporary frustration of the escape. The evidence is not so clear that it compels a conclusion either way, and the jury was entitled to draw such reasonable inferences from the evidence as it chose.

We find that Pina's activities constituted more than mere preparation and could be construed as an attempted escape. We note further that Section 38.09 of the Penal Code provides:

> A person commits an offense if, with intent to facilitate escape, he introduces into a correctional facility, or provides a person in custody or an inmate with, a deadly weapon or anything that may be useful for escape.

TEX. PEN.CODE ANN. § 38.09(a) (Vernon 1994).

Pina also contends he is entitled to a new trial because of comments made by the prosecutor in his closing argument that constituted comments on his failure to testify. The prosecutor's comments were as follows:

> Keep your eye on the ball in this case. You have seen the games where they have the shell game where they shuffle the things around and you're supposed to follow it with your eye, in a way a trial—in a criminal trial, the defense it is a shell game, especially where you have a guilty defendant, where you have a defendant that's desperate, where you have a defendant with no hope except to pull a shell game to confuse you, to mislead you, to divert your attention from the truth.

*Wouldn't it be nice if Mr. Pina had told a retired preacher that he had done the killing? But—*

MR. MEEHAN: Your Honor, we object to that argument. That's improper, an improper comment on Mr. Pina's failure to testify.

THE COURT: I sustain it.

MR. MEEHAN: We ask the court for a mistrial.

THE COURT: Mistrial is denied.

(Emphasis added.)

■ The failure of a defendant to testify on his own behalf in a criminal trial may not be taken as a circumstance against him, and neither counsel may allude to or comment on such a refusal. TEX.CODE CRIM. PROC. ANN. art. 38.08 (Vernon 1979); *Marable v. State,* 802 S.W.2d 3, 4 (Tex. App.—Texarkana 1990, pet. ref'd). To constitute reversible error, however, the comment must be either manifestly intended, or be of such a character that the jury would naturally and necessarily take it to be a comment on the defendant's failure to testify. *Owen v. State,* 656 S.W.2d 458, 459 (Tex.Crim.App.1983); *Marable v. State,* 802 S.W.2d at 4–5. If the comment calls the jury's attention to the absence of evidence that only the testimony of the defendant could supply, the error is reversible. *Owen v. State,* 656 S.W.2d at 459; *Marable v. State,* 802 S.W.2d at 5.

■ No reversible error occurred here, because the prosecutor's statement did not constitute an impermissible comment on Pina's failure to testify. We note that in the initial phase of closing argument, the prosecutor referred to the testimony of Kenneth Walker and Armado Sanchez, both of whom testified that Pina said he was going to or did kill Renshaw, and both of whom had criminal records. Defense counsel's closing argument attacked the credibility of both of these witnesses, focusing on their criminal records. It is evident that the prosecutor, in his final summation, was arguing that, while it would have been better for his case if the

witnesses testifying to Pina's admission had been "retired preachers," they were still worthy of belief. For example, he said, "Yes, I wish I had a better witness to these situations than these people...."

The language used by the prosecutor does not directly or indirectly comment on Pina's failure to testify. The prosecutor was not commenting on Pina's silence, but on the quality of the State's witnesses.

■ Next, Pina contends the trial court erred in denying his motion for a mistrial.

The oral motion was made during voir dire:

MR. MEEHAN: Comes now Amador Aparicio Pina by and through his attorneys of record, Dan Meehan and Val Varley, and moves for a mistrial in this cause. At lunch he was taken from the courthouse in handcuffs and taken through a number of jurors. There were jurors number 6 and number 5 and number 56 and number 21 who we believe saw Mr. Pina in handcuffs or in shackles after we broke for the lunch hour. There may have been others but those are the ones that we saw that we recognized. It's our belief that that alone is sufficient to render it impossible for Mr. Pina to receive a fair trial in violation of his constitutional right to a fair trial and equal protection under the law and move for a mistrial.

The trial court questioned the jurors referred to in the motion and obtained the following information.

- Juror No. 5, Mrs. Miles, saw Pina during the lunch hour crossing the street with a guard. She did not see handcuffs or any other restraint. Nothing she saw caused her to have any adverse feeling toward Mr. Pina.

- Juror No. 6, Mrs. Trompler, saw Pina walking with the sheriff's deputies and saw him in handcuffs in the courthouse. She was subsequently excused from service by the trial court.

- Juror No. 21, named Eacret, did not remember seeing Pina.
- Juror No. 56, Mrs. Neeley, saw Pina during the noon hour on the street with several other people. He appeared to her to be handcuffed. Mrs. Neeley was removed from the panel for cause.

Although in the oral motion counsel for Pina noted that other unnamed jurors may also have seen Pina in handcuffs, we find nothing in the record of any specific request for the trial court to question other jurors regarding their observations.

The harm suffered by a defendant when jurors see him in chains infringes on his constitutional presumption of innocence. All efforts should be made to prevent the jurors from seeing the defendant in shackles or handcuffs, absent exceptional circumstances or a manifest need for such restraint. *Long v. State*, 823 S.W.2d 259, 282 (Tex.Crim.App.1991).

There was no obvious physical restraint on Pina in the courtroom during the trial in the presence of the jury. The rules are different where jurors see a defendant under physical restraint *outside* the courtroom. If such encounters are inadvertent, fortuitous, and away from the courtroom, there is no error. *Hernandez v. State*, 805 S.W.2d 409, 415 (Tex.Crim. App.1990); *Gonzalez v. State*, 966 S.W.2d 804, 807 (Tex.App.—Amarillo 1998), *aff'd*, 3 S.W.3d 915 (Tex.Crim.App.1999); *Lovely v. State*, 894 S.W.2d 99, 103 (Tex.App.— Beaumont 1995, pet. ref'd); *Uptergrove v. State*, 881 S.W.2d 529, 530 (Tex.App.— Texarkana 1994, pet. ref'd); *Green v. State*, 829 S.W.2d 938, 939 (Tex.App.— Fort Worth 1992, no pet.).

We also find no harm. The two jurors who said they saw Pina outside the courtroom in handcuffs were removed from the panel. Since the other two testified that they did not see Pina in handcuffs outside the courtroom, there was no harm in failing to disqualify them. No other jurors were questioned, and no further relief was requested. We find no basis to conclude that the trial court abused its discretion in this regard.

For the reasons stated, we affirm the judgment.