In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00232-CR
______________________________


WILLIE JOHN BOWIE, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 188th Judicial District Court
Gregg County, Texas
Trial Court No. 30,624-A


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION

            Willie John Bowie has filed a motion asking this Court to dismiss his appeal. Pursuant to
Tex. R. App. P. 42.2, his motion is granted.
            We dismiss the appeal.
 
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          November 3, 2003
Date Decided:             November 4, 2003

Do Not Publish




New Roman"> N.B. visited the school nurse because her stomach was hurting. She finally told Oretha Ellis,
the school nurse, what was happening because she was tired of what Benjamin was doing to her. 
Ellis contacted Children's Protective Services (CPS). At the Children's Assessment Center, N.B. told
them what had happened. She was seen by a female physician, who took blood samples and
examined her private part. She was taken from S.B.'s home to live with her father, where she lived
for approximately eleven months. N.B. was returned to her mother's home about four weeks before
trial.

 N.B. had come to Ellis several times complaining of stomach problems. Specifically, she
remembers N.B. coming in on a Friday and again on the following Monday. Ellis could perceive
no stomach ailment, but did notice N.B. was "squirming" around, unable to sit still, which is a
possible sign of a problem in the vaginal area. After some questioning, N.B. admitted to Ellis
someone had touched her in the private area. Ellis notified the school principal, and CPS was called. 
S.B. was called from work to come in to the school; when told of what her daughter had reported,
she became upset and asked N.B. why she had not told her about it.

 Alicia Courtney was the CPS investigator in N.B.'s case. Her job is to talk with the kids, the
parents, and the alleged individual who harmed the child. Consistent with normal procedure, N.B.
was taken from her home, and Benjamin was asked to leave the home, which he did. Courtney
received a report that Benjamin had, contrary to instructions, returned to the apartment. She said that
S.B. did not, at first, believe N.B's report of abuse.

 Sheela Lahoti, a pediatrician employed at the Children's Assessment Center, testified from
notes that had been prepared by an examining nurse who was no longer employed at the Center. 
N.B. complained of pain on urination (dysuria), which would be associated with a urinary tract
infection. This can be related to sexual abuse. In addition, N.B. complained of vaginal itching and
pain in "her privacy." N.B. told the nurse Benjamin touched her on her private part with his "privacy
area" and his hands, and on her "booty" with his "privacy part." This had been happening since she
was six, and it hurt her. She said he put his "privacy part" in her and that sperm came out. The nurse
examined both N.B.'s vaginal and anal areas. The anal exam was completely normal, and the
examination of the vaginal area did not show definite signs of abuse, although Lahoti did testify that
such physical signs would not always be present and that the physical findings would be consistent
with what N.B. had told her.

 S.B. testified for the defense. She married Benjamin in 1997, although they had lived
together in different locations for several years before this. N.B. always lived with her when she
lived with Benjamin. During the time period before their marriage, S.B. and Benjamin had separated
for a time. They lived in several locations during this time, including locations on Greenspoint,
Gessner, and Southmore Streets. She worked from very early in the morning until the early evening
on Sundays, Mondays, and Tuesdays, for Metro Lift. Benjamin worked long hours for a moving
company and B.F.I. during this period. The older children in the apartment were essentially
responsible for the care of the younger children who lived there. She remembered being called at
work on a Monday regarding N.B. and that she had to go to the school. S.B. was not told of the
allegations until she arrived. After being told of the allegations of sexual abuse, she asked her
daughter why she did not tell her about the abuse. 

 S.B. was asked if she believed N.B.' s allegations, to which she responded in the negative. 
Defense counsel, after some apparent confusion as to exactly what N.B. had previously alleged,
attempted to present to the jury N.B.'s previous statement to her real father that her Uncle Tim had
beaten up and raped S.B. S.B. testified N.B. told her later, "Oh, mama, I was just playing." The
State objected, and the trial court did not admit the statement. S.B. admitted she told police
Benjamin held a carpet cutter to her throat, which resulted in Benjamin being incarcerated for 121
days, but that S.B.'s statement was a lie. She also admitted that after CPS had instructed Benjamin
not to return to the apartment, he did drive by and pick her up for work, although she denied he had
any contact with the children. 

 D.B., S.B.'s brother and N.B.'s uncle, was also called as a defense witness. He had known
Benjamin for about three years. He also lived in the apartment on Southmore and slept on a different
couch in the living room. He testified other persons could not enter Tim's room, because only Tim
had a key, and the room was kept locked when he was not there. D.B. testified that on the day in
question, he recalls N.B. being upset with Benjamin because he would not give her any money and
was make her take a bath and go to bed. He said there was no opportunity for sexual abuse while
he was there. On cross-examination, he admitted to a prior criminal record. 

 In the only issue raised on appeal, Benjamin contends the trial court committed reversible
error by denying admission before the jury of the testimony of a witness that N.B. had previously
made a false allegation against regarding sexual misconduct. 

 A trial court's decision to admit or exclude evidence is reviewed under the standard of abuse
of discretion. Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); Pina v. State, 38
S.W.3d 730, 736 (Tex. App.-Texarkana 2001, pet. ref'd). An abuse of discretion is shown when the
trial court's determination is so clearly wrong as to lie outside the zone of reasonable disagreement. 
Cantu v. State, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992).

 In this case, there are competing legal principles to be applied. One is Tex. R. Evid. 608(b),
which provides: "Specific instances of the conduct of a witness, for the purpose of attacking or
supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not
be inquired into on cross-examination of the witness nor proved by extrinsic evidence." On the other
hand, Tex. R. Evid. 607 permits the credibility of a witness to be attacked by any party. Another 
principle to be considered is the Confrontation Clause found in the Sixth and Fourteenth
Amendments to the United States Constitution. U.S. Const. amends. VI, XIV. This clause
guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses
against him. This means more than mere physical confrontation; its essential purpose is to secure
for the opponent the opportunity of cross-examination. Delaware v. Van Arsdall, 475 U.S. 673, 678,
106 S.Ct. 1431, 89 L.Ed.2d 674, 683 (1986). In addition to being permitted to delve into the witness'
story to test his or her perception and memory, cross-examination also affords defense counsel the
opportunity to impeach, i.e., discredit, the witness. Delaware v. Fensterer, 474 U.S. 15, 19, 106
S.Ct. 292, 88 L.Ed.2d 15, 19 (1985). 

 However, neither the Confrontation Clause, nor the general principle of permitting the
impeachment of the credibility of any witness, prevents a trial court from imposing limitations on
a lawyer's inquiry into the potential bias of an opposing witness. The trial court maintains "broad
discretion" to impose limitations based on harassment, prejudice, confusion of evidence, possible
danger to the witness, and the injection of cumulative or collateral evidence. Lopez v. State, 18
S.W.3d 220, 222 (Tex. Crim. App. 2000). The right guarantees only an opportunity for effective
cross-examination, not cross-examination that is effective in whatever way, and to whatever extent,
the defense may wish. Van Arsdall, 475 U.S. at 679; Fensterer, 474 U.S. at 20. See also Booker v.
State, 929 S.W.2d 57, 65 (Tex. App.-Beaumont 1996, pet. ref'd). The Texas Court of Criminal
Appeals has recently recognized both the right, and the limitations on the right, of cross-examination. 
Issues regarding the Confrontation Clause must be examined on a case-by-case basis, taking into
account both the defendant's right of cross-examination and risk factors associated with the
admission of the evidence. When there is a conflict between the Confrontation Clause and the Rules
of Evidence, the Constitution should control, but where possible, such inconsistency should be
removed by reasonable construction. Lopez, 18 S.W.3d at 222-23. 

 In Lopez, the issue addressed was, in a case involving a sexual offense, whether the
Confrontation Clause requires that previous false accusations of sexual abuse against a person other
than the defendant be admissible, notwithstanding Tex. R. Evid. 608(b)'s specific prohibition. Id.
at 223. The Court analyzed cases from other jurisdictions, many of which authorize a special
exception in cases of sex offenses, allowing admission of prior false accusations of abuse by the
complainant despite evidentiary rules to the contrary. Because Texas cases do not favor the creation
of a special exception to the Rules of Evidence for sex offenses, and finding the rationale of the cases
from other jurisdictions unpersuasive, the Texas Court of Criminal Appeals refused to create a per
se exception to Rule 608(b) for such offenses. Id. at 225. However, the Court did recognize that the
requirements of the Confrontation Clause may, occasionally, require that certain evidence be
admissible notwithstanding that it should be excluded under the Rules of Evidence. Id. at 225. See
also Puderbaugh v. State, 31 S.W.3d 683, 687 (Tex. App.-Beaumont 2000, pet. ref'd). 

 In order to make such a determination, the appellate court must balance the probative value
of such evidence against the risks entailed by its admission. Id. at 225. In Lopez, the Court noted
that the alleged incident had occurred when the alleged victim and the defendant were alone, and
there was no other evidence pointing to the defendant's guilt. Id. at 225. We have a similar situation
in the present case; the record shows there were no witnesses to the events allegedly occurring
between N.B. and Benjamin. Further, while the medical evidence is not inconsistent with sexual
abuse of the child, it does not conclusively establish that abuse or Benjamin's involvement. As was
the case in Lopez, the trier of fact must make an evaluation of the credibility of the complainant in
order to make its determination. 

 In Lopez, the complainant had previously allegedly falsely accused his mother of physical,
rather than sexual, abuse, by throwing him against a washing machine. The Texas Court of Criminal
Appeals determined this refusal to admit such evidence was not an abuse of discretion by the trial
court because 1) the complaint was not established to be false; and 2) the allegation of such physical
abuse had almost nothing in common with the allegations in question at trial, i.e., the aggravated
sexual assault of a child by compelling the child to perform oral sex on the defendant. Id. at 226. 

 In the present case, N.B. denied ever telling anyone her Uncle Tim is the one who had sex
with her; she further denied ever telling anyone her Uncle Tim beat up her mother and had sex with
her. On the other hand, S.B. testified N.B. acknowledged making such statements and further
acknowledged that she was "only playing" when she made them. As in Lopez, the evidence of the
truth or falsity of the allegation was not conclusively established. Further, there is a dissimilarity,
as in Lopez, between the activity alleged to have occurred in the allegedly false statement (which
related to the alleged assault and sexual assault of the mother), and the allegations of sexual
misconduct with a child, with which Benjamin was charged in this case. Although there was some
indication in the record that defense counsel may have thought N.B. had previously falsely accused
her uncle of sexual abuse, the record, as cited above, clearly shows the allegedly false prior
accusation concerned her uncle and her mother, not the complainant. 

 We find the trial court did not abuse its discretion. This point is overruled.

 The judgment of the trial court is affirmed.



 Ben Z. Grant

 Justice


Date Submitted: March 1, 2002

Date Decided: May 10, 2002


Do Not Publish