IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00211-CR

 

Darla Gayle Jackson,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 



From the County Court

Bosque County, Texas

Trial Court No. 15393

 



ORDER










 

          Darla Jackson filed her notice of
appeal with the trial court clerk on January 12, 2006.  The county clerk did
not forward a copy of the notice of appeal to us as required by the Rules of
Appellate Procedure.  Tex. R. App. P.
25.2(e).  Jackson mailed us a copy of the notice of appeal in July.  By that
time, this Court was already six months behind in processing the appeal.

          We have not yet received the record
from the county clerk.  It was due in February.  Over seven months since the
notice of appeal was filed have now passed.  This delay has been caused, in part,
by the county clerk.  Therefore, to prevent further delay, we order the county
clerk to forward the complete clerk’s record to this Court within 30 days from
the date of this order.  See Tex.
R. App. P. 37.3(a)(2).

 

                                                                   PER
CURIAM

Before
Chief Justice Gray,

          Justice
Vance, and

          Justice
Reyna

Order
issued and filed August 30, 2006

Do
not publish 






lass=MsoNormal> 

The State of Texas,

                                                                                   
Appellee

 

 

 




From the 77th District Court

Limestone
 County, Texas

Trial Court Nos. 11051-A and
11052-A

 



MEMORANDUM 
Opinion



 

 

           
A grand jury presented two indictments against David Tucker for aggravated
assault against a public servant arising from Tucker having displayed a handgun
as he was about to be escorted away from his girlfriend’s home by two sheriff’s
deputies following a domestic dispute.  A jury found Tucker guilty of
aggravated assault as charged in cause no. 11051-A (appellate cause no.
10-07-00048-CR) and found him guilty of the lesser-included offense of deadly
conduct in cause no. 11052-A (appellate cause no. 10-07-00049-CR).  The
court sentenced Tucker to ten years and one day in prison for the aggravated
assault charge and one year in jail for the deadly conduct charge.

           
Tucker contends in his sole issue in the aggravated assault appeal that the
court erred by failing to instruct the jury that the statutory presumption
provided by section 22.02(c) of the Penal Code (that a defendant is presumed to
have known that the complainant was a public servant if he was wearing a
distinctive uniform or badge) is a permissive presumption.  Tucker’s
counsel has filed an Anders brief in the deadly conduct appeal.  We
will affirm in both cases.

Statutory Presumption

           
Tucker contends that the court erred by failing to instruct the jury that the
statutory presumption provided by section 22.02(c) of the Penal Code is a
permissive presumption.

           
“Mandatory presumptions are unconstitutional because they relieve the State of
the burden of proving every element of the offense beyond a reasonable
doubt.”  Garrett v. State, 220 S.W.3d 926, 930 (Tex. Crim. App.
2007) (citing Francis v. Franklin, 471 U.S.
307, 317, 105 S. Ct. 1965, 85 L. Ed. 2d 344 (1985); Sandstrom v. Montana,
442 U.S. 510, 524, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979); Brown v. State,
122 S.W.3d 794, 799 (Tex. Crim. App. 2003)).  Thus, section 2.05(a)(2) of
the Penal Code requires the jury to be instructed on the permissive nature of
any statutory presumption favorable to the State and how the presumption
relates to the State’s burden of proof.  See Tex. Pen. Code Ann. § 2.05(a)(2) (Vernon Supp. 2007). 
Subsection (a)(2) provides:

      if the existence of
the presumed fact is submitted to the jury, the court shall charge the jury, in
terms of the presumption and the specific element to which it applies, as
follows:

 

      (A) that the facts
giving rise to the presumption must be proven beyond a reasonable doubt;

 

      (B) that if such
facts are proven beyond a reasonable doubt the jury may find that the element
of the offense sought to be presumed exists, but it is not bound to so find;

 

      (C) that even
though the jury may find the existence of such element, the state must prove
beyond a reasonable doubt each of the other elements of the offense charged;
and

 

      (D) if the jury has
a reasonable doubt as to the existence of a fact or facts giving rise to the
presumption, the presumption fails and the jury shall not consider the
presumption for any purpose.

 

Id.

           
Section 22.02(c) provides, “The actor is presumed to have known the person
assaulted was a public servant or a security officer if the person was wearing
a distinctive uniform or badge indicating the person’s employment as a public
servant or status as a security officer.”  Id.
§ 22.02(c) (Vernon
Supp. 2007).

           
Here, the court instructed the jury on this presumption by quoting section
22.02(c) almost verbatim, omitting the references to security officers. 
But the court erred by failing to include the instructions required by section
2.05(a)(2).  See Garrett v. State, 159 S.W.3d 717, 720 (Tex.
App.—Fort Worth 2005), aff’d, 220 S.W.3d 926 (Tex. Crim. App. 2007).

           
Because Tucker did not object, we must determine the appropriate harm standard
to be applied.  Ordinarily, we would apply the “egregious harm” standard
of Almanza v. State, 686 S.W.2d 157, 171-72 (Tex. Crim. App. 1985) (op.
on reh’g).  Tucker cites a concurring opinion authored by Justice Scalia
in Carella v. California, 491 U.S.
263, 109 S. Ct. 2419, 105 L. Ed. 2d 218
(1989), and suggests that a different standard applies when the complaint
involves a mandatory presumption.  However, the Court of Criminal Appeals
has rejected this position, holding that the Almanza “egregious harm”
standard is the correct standard to apply.  Garrett, 220 S.W.3d at
931-32.

[J]ury-charge error is egregiously harmful if it
affects the very basis of the case, deprives the defendant of a valuable right,
or vitally affects a defensive theory.  In examining the record to
determine whether jury-charge error is egregious, the reviewing court should
consider the entirety of the jury charge itself, the evidence, including the
contested issues and weight of the probative evidence, the arguments of
counsel, and any other relevant information revealed by the record of the trial
as a whole.

 

Sanchez v. State, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006) (citing Ngo v. State,
175 S.W.3d 738, 750 & n.48 (Tex. Crim. App. 2005); Almanza, 686
S.W.2d at 171-72) (other citations omitted).

           
The presumption was not discussed during voir dire or in opening
statements.  Tucker’s counsel did say in her opening statement that “[t]he
question is whether or not he actually pointed this weapon at the police.”

           
Deputy Tim Edwards, the complainant in the aggravated assault case, testified
that he responded in his “patrol unit” to the call on the occasion in question.
 On arriving, he saw Tucker talking to another deputy, Sergeant Roark, by
a fence.  Deputy John Liscano, the complainant in the deadly conduct case,
arrived at about the same time in his own patrol car.  Edwards and Liscano
talked briefly with Roark then went to talk with Tucker’s girlfriend. 
Edwards later engaged in “general conversation” with Tucker.

           
Tucker and the officers agreed that Tucker would leave the premises, but Roark
allowed Tucker to talk to his girlfriend before he left.  According to
Edwards, the “next thing we know” Liscano was chasing Tucker toward a barn
behind the house.  Liscano ordered Tucker to “stop,” but he ran into the
barn with Edwards and Liscano following.  After Liscano commanded Tucker
to “let me see your hands,” Tucker displayed a handgun and pointed it in the
direction of Edwards and Liscano.  Roark and Liscano approached, and Roark
was able to disable Tucker with pepper spray.

           
A video recording of the encounter that was admitted in evidence depicts Tucker
asking Edwards if he can talk to his girlfriend before leaving.  Edwards
told him, “Let the sergeant make that decision.”  The three video
recordings admitted in evidence all depict the officers wearing their uniforms.

           
Liscano testified that all three officers were wearing their uniforms with
badges that night.  After Tucker was arrested, he “kept asking what he was
being charged with.”

           
The complainant testified that, because she was employed as a prison guard, she
had been trained with handguns and had one beside her bed that night.  She
said that Tucker threatened to shoot himself with her gun during their
argument.  Tucker also commented to her that “he could always walk outside
with it when they got there and they’d shoot him.”

           
The prosecutor’s closing argument reminded the jurors of the statutory
presumption and referred them to the abundant evidence that the officers were
all uniformed on the occasion in question.  Defense counsel reiterated,
“The question is, did he point that gun at the officers?”

           
Here, the record affirmatively demonstrates that Tucker’s knowledge of Deputy
Edwards’s status as a public servant was not a contested issue at trial.  See
Garrett, 159 S.W.3d at 721.  And the evidence set out above relevant
to his knowledge of the deputy’s status is considerable.  Therefore, we
hold that Tucker did not suffer egregious harm from the court’s failure to
include the instructions on statutory presumptions required by section
2.05(a)(2).  Id. 
Tucker’s sole issue in the aggravated assault case is overruled.

Anders Claim

           
Tucker’s appellate counsel filed an Anders brief in the deadly conduct
appeal, contending that the appeal presents no issues of arguable merit. 
Tucker has not filed a pro se brief or other response, though he was
notified of his right to do so.

           
Counsel’s brief meets the requirements of Anders by presenting a
professional evaluation of the record and detailing why there are no arguable
grounds for reversal.  See Currie v. State, 516 S.W.2d 684, 684
(Tex. Crim. App. 1974); Gearhart v. State, 122 S.W.3d 459, 464 (Tex.
App.—Corpus Christi 2003, pet. ref’d); Sowels v. State, 45 S.W.3d 690,
691 (Tex. App.—Waco 2001, no pet.), overruled on other grounds by Meza v.
State, 206 S.W.3d 684, 689 (Tex. Crim. App. 2006).

           
Counsel does state that “two potential issues are of concern”: (1) several
jurors on Tucker’s venire had served as jurors in an interim civil trial; and
(2) a juror saw Tucker entering the courthouse being escorted by the bailiff
and another man and assumed Tucker “had a ride up here with the police.”

           
Regarding the veniremembers who had served on the interim civil jury, counsel
observes that there was no objection to their service on Tucker’s jury. 
Thus, the issue was not preserved.  See Tex. R. App. P. 33.1(a)(1); Berry v. State, 976 S.W.2d
735, 738 (Tex. App.—Tyler 1998, pet. ref’d).

           
Counsel analogizes the juror’s having seen Tucker under escort and his
assumption that Tucker had been transported by “the police” to a situation
where a juror observes a defendant in shackles or other restraints.  See,
e.g., Deck v. Missouri, 544 U.S. 622, 629, 125 S. Ct. 2007, 2012, 161 L.
Ed. 2d 953 (2005) (Due Process Clause prohibits use of physical restraints
visible to the jury absent a trial court determination “that they are justified
by a state interest specific to a particular trial”).  However, “[t]he
rules are different where jurors see a defendant under physical restraint outside
the courtroom.  If such encounters are inadvertent, fortuitous, and away
from the courtroom, there is no error.”  Pina v. State, 38 S.W.3d
730, 741 (Tex. App.—Texarkana 2001, pet. ref’d).

           
Here, what the juror saw was “inadvertent, fortuitous, and away from the
courtroom.”  And there is nothing in the record to indicate that the juror
saw anything more than Tucker being escorted as opposed to being under any
physical restraint.  Thus, no error was committed by permitting this juror
to serve.  Id.

 

Independent Review

           
In addition to reviewing the potential issues raised by counsel, we must also
conduct an independent review of the record to determine whether “arguable
grounds for appeal exist.”  See Bledsoe v. State, 178 S.W.3d 824,
826-27 (Tex. Crim. App. 2005); accord Villanueva v. State, 209 S.W.3d
239, 242-43 (Tex. App.—Waco 2006, no pet.).  We have conducted such a
review and have found no issues of arguable merit.

Conclusion

We affirm the judgments in both cases. 
Pursuant to Rule of Appellate Procedure 48.4, counsel must send Tucker a copy
of our decision by certified mail, return receipt requested, at Tucker’s last
known address.  Tex. R. App. P. 48.4.
 Counsel must also notify Tucker of his right to file a pro se
petition for discretionary review.   Id.; see also Ex parte
Owens, 206 S.W.3d 670, 673-74 (Tex. Crim. App. 2006); Villanueva,
209 S.W.3d at 249.  We grant counsel’s motion to withdraw in cause no.
10-07-00049-CR, effective upon counsel’s compliance with Rule 48.4 as evidenced
by “a letter [to this Court] certifying his compliance with this rule.”  See
Tex. R. App. P. 48.4; see also
Meza, 206 S.W.3d at 689 & n.23; Villanueva, 209 S.W.3d at 249.

 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief Justice Gray concurring with note)*

Affirmed

Opinion delivered and
filed May 28, 2008

Do not publish

[CR25]

 

*          
(“Chief Justice Gray concurs in the judgment to the extent that it affirms the
conviction and grants counsel’s motion to withdraw.  A separate opinion
will not issue.  He notes, however, that the opinion of the majority
suffers the same errors in evaluating and ruling on the merits of issues
briefed by counsel as does this court’s opinion in Villanueva, as well
as in Garner which cited and relied on Villanueva, to go into an
extensive discussion, analysis, and disposition of the issues discussed by
counsel.  See Garner v. State, No. 10-05-00218-CR, 2007 Tex. App.
LEXIS 4246 (Tex. App.—Waco
May 30, 2007, pet. granted) (not designated for publication); Villanueva v.
State, 209 S.W.3d 239 (Tex. App.—Waco 2006, no pet.).  The purpose of
counsel’s discussion of issues is so that we can determine that counsel has
fulfilled the duty of appointed counsel to diligently examine the record for
issues of arguable merit.  We do not accomplish this by review,
discussion, and ruling on the issues identified by counsel.  Thus the discussion
and holdings on the issues addressed in the Anders brief in support of the
motion to withdraw are unnecessary to our review and therefore dicta.”)