ACCEPTED
06-15-00108-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
12/23/2015 11:02:19 AM
DEBBIE AUTREY
CLERK

**ORAL ARGUMENT WAIVED**

CAUSE NO. 06-15-00108-CR

IN THE

COURT OF APPEALS

SIXTH APPELLATE DISTRICT OF TEXAS AT TEXARKANA

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS

12/23/2015 11:02:19 AM

DEBBIE AUTREY
Clerk

_____

ALEXANDER NATHANIEL BRENES, Appellant

V.

THE STATE OF TEXAS, Appellee

_____

ON APPEAL FROM THE 6TH DISTRICT COURT;
LAMAR COUNTY, TEXAS; TRIAL COURT CAUSE NO. 23814;
HONORABLE WILLIAM "BILL" HARRIS, JUDGE

_____

# APPELLEE'S (STATE'S) BRIEF

_____

Gary D. Young
Lamar County and District Attorney
Lamar County Courthouse
119 North Main
Paris, Texas   75460
(903) 737-2470
(903) 737-2455 (fax)

**ATTORNEYS FOR THE STATE OF TEXAS**

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to Tex. R. App. P. 38.2(a)(1)(A), the list of parties and counsel is not required to supplement or correct the appellant's list.

# TABLE OF CONTENTS

**PAGE NO.:**

IDENTITY OF PARTIES AND COUNSEL . . . . . . . . . . . .. . . . .     i

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . .     ii

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . .     iv

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . .     viii

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . .     ix

ISSUE PRESENTED IN REPLY . . . . . . . . . . . . . . . . . . . . . .     x

INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     1

STATEMENT OF FACTS  . . . . . . . . . . . . . . . . . . . . . . . . . .     2

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . .     10

ARGUMENT AND AUTHORITIES

    **ISSUE/POINT OF ERROR IN REPLY NO. 1:   THE TRIAL COURT DID NOT ERR IN ADJUDGING THE APPELLANT GUILTY OF POSSESSION WITH INTENT TO DELIVER A CONTROLLED SUBSTANCE, NAMELY, "ECSTASY OR METHYLENDIOXY METHAMPHETAMINE," AS ALLEGED IN THE INDICTMENT BECAUSE BRENES COULD NOT ESTABLISH THE VOID JUDGMENT EXCEPTION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     11

**ISSUE/POINT OF ERROR IN REPLY NO. 2:**
**ASSUMING THE APPELLANT PRESERVED ERROR,**
**THE TRIAL COURT DID NOT ERR IN SENTENCING**
**THE APPELLANT WITHIN THE APPLICABLE RANGE**
**OF PUNISHMENT FOR A FIRST DEGREE FELONY.**     16

**ISSUE/POINT OF ERROR IN REPLY NO. 3:   THE TRIAL**
**COURT DID NOT ERR IN DENYING THE APPELLANT'S**
**MOTION TO SUPPRESS AND IN CONCLUDING THAT THE**
**SEARCH OF THE APPELLANT'S VEHICLE WAS LAWFUL**
**BECAUSE ONCE PROBABLE CAUSE WAS ESTABLISHED,**
**THE OFFICERS COULD SEARCH THE APPELLANT'S**
**VEHICLE WITHOUT A WARRANT.** . . . . . . . . . . .     19

**ISSUE/POINT OF ERROR IN REPLY NO. 4:   THE TRIAL**
**COURT DID NOT ERR IN ACCEPTING THE**
**APPELLANT'S GUILTY PLEA BECAUSE BRENES**
**WAIVED ANY COMPLAINT AS TO THE**
**ADMISSIBILITY OF HIS RECORDED STATEMENT**
**BY FAILING TO SPECIFICALLY OBJECT ON THE**
**BASIS OF ARTICLE 38.22 OF THE TEXAS CODE OF**
**CRIMINAL PROCEDURE; ALTERNATIVELY, THE**
**APPELLANT (BRENES) COULD NOT SHOW ANY**
**HARM.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     26

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     29

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . .     30

CERTIFICATE OF SERVICE  . . . . . . . . . . . . . . . . . . . . . . . .     30

# INDEX OF AUTHORITIES

**CASES:** **PAGE:**

*Amos v. State*, 819 S.W.2d 156, 161 (Tex. Crim. App. 1991),
    *cert. denied*, 504 U.S. 917, 112 S.Ct. 1959, 118
    L.Ed.2d 561 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24,26

*Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim.
    App. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19,20

*England v. State*, 887 S.W.2d 902, 913 (Tex. Crim. App.
    1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Ex parte Patterson*, 969 S.W.2d 16, 19 (Tex. Crim.
    App. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Ex parte Pena*, 71 S.W.3d 336, 336-37 n. 1 (Tex. Crim.
    App. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Flowers v. State*, 438 S.W.3d 86, 107 (Tex. App.--Texarkana
    2014, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Gant v. State*, 116 S.W.3d 124, 134, 135 (Tex. App.--Tyler 2003,
    pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25,26

*Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex. Crim.
    App. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Graves v. State*, 307 S.W.3d 483, 489 (Tex. App.--Texarkana
    2010, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim.
    App. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19,20

*Harris v. State*, 468 S.W.3d 248, 255 (Tex. App.--Texarkana
    2015, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**CASES:**                                                     **PAGE:**

*Hernandez v. State*, 867 S.W. 900, 907 (Tex. App.--Texarkana
1993, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   24,26

*Hitchcock v. State*, 118 S.W.3d 844, 851 (Tex. App.--
Texarkana 2003, pet. ref'd). . . . . . . . . . . . . . . . . . . . .   24,26

*Hill v. State*, 440 S.W.3d 670, 676 (Tex. App.--Tyler
2012, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

*Hoffa v. United States*, 385 U.S. 293, 302; 87 S. Ct. 408; 17 L.
Ed. 2d 374 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22,23

*Joshua David Stevens v. The State of Texas*, No. 06-05-00235-CR,
2006 Tex. App. LEXIS 3671, 3761 *3, *4, *7, *8, *9 (Tex.
App.--Texarkana May 2, 2006, pet. ref'd) (mem. op., not
designated for publication) (Carter, J.) . . . . . . . . . . .   13,14,15

*Katz v. United States*, 389 U.S. 347, 351, 88 S. Ct. 507, 19 L. Ed.
2d 576 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21,22

*Mizell v. State*, 119 S.W.3d 804, 806 n. 6 (Tex. Crim.
App. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

*Neal v. State*, 256 S.W.3d 264, 282 (Tex. Crim. App. 2008),
*cert. denied*, 555 U.S. 1154, 129 S.Ct. 1037, 173
L.Ed.2d 471 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . .   24

*Nix v. State*, 65 S.W.3d 664, 667-668, 668 n. 14 (Tex. Crim.
App. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

*People v. Catania*, 427 Mich. 447, 465-66; 398 N.W.2d 343,
351-52 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22

*Pina v. State*, 38 S.W.3d 730, 736 (Tex. App.--Texarkana 2001,
pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   27

**CASES:** **PAGE:**

*Rogers v. State*, 291 S.W.3d 148, 151 (Tex. App.--Texarkana
2009, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim.
App. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim.
App. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*State v. Guzman*, 959 S.W.2d 631, 634 (Tex. Crim. App.
1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*State v. Mazuca*, 375 S.W.3d 294, 296 n. 2 (Tex. Crim. App. 2012)
*cert. denied*, ___ U.S. ___, 133 S.Ct. 1724, 185 L.Ed.2d 789
(2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14,17

*State v. Ross*, 32 S.W.3d 853, 856-57 (Tex. Crim.
App. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Johns*, 469 U.S. 478, 484; 105 S.Ct. 881, 83
L.Ed.2d 890 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App.
1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19


**STATUTES:** **PAGE NO:**

TEX. CODE CRIM. PROC. ART. 38.22 . . . . . . . . . . . . . . 27,28

TEX. HEALTH & SAFETY CODE ANN. § 481.103 . . . . .

TEX. HEALTH & SAFETY CODE ANN. § 481.113(d)
(West 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

| STATUTES: | PAGE NO: |
|---|---|
| TEX. HEALTH & SAFETY CODE ANN. § 481.113(a), (d) (West 2010 & Supp. 2015) . . . . . . . . . . . . . . . . . . . . . | viii,17 |
| TEX. HEALTH & SAFETY CODE ANN. § 481.121(a), (b)(4) (West 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . | viii |
| TEX. PENAL CODE ANN. § 8.06 (West 2011) . . . . . . . . . | 21 |
| TEX. PENAL CODE ANN. §12.32 (West 2006). . . . . . . . . | 17,18 |
| TEX. R. APP. P. 33.1(a) . . . . . . . . . . . . . . . . . . . . . . . . . | 16,21,27 |
| TEX. R. APP. P. 38.1(e) . . . . . . . . . . . . . . . . . . . . . . . . . | ix |
| TEX. R. APP. P 38 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1 |
| TEX. R. APP. P 38.2(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . | ix |
| TEX. R. APP. P. 38.2(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . | i |
| TEX. R. APP. P. 44.2(b) . . . . . . . . . . . . . . . . . . . . . . . . . | 28 |

**STATEMENT OF THE CASE**

In this narcotics case, the State's indictment charged the appellant (Brenes) as a habitual offender and with felony offenses in two counts: (1) possession of marijuana of fifty (50) pounds or less but more than five (5) pounds in a drug free zone; and (2) possession with intent to deliver a controlled substance, namely, "Ecstasy or methylendixoy methamphetamine" of four grams or more but less than four hundred grams. *See* CR, pgs. 6-8. *See* Tex. Health & Safety Code Ann. § 481.121(a), (b)(4) (West 2010) (Offense: Possession of Marihuana); Tex. Health & Safety Code Ann. § 481.113(a), (d) (West 2010 & Supp. 2015) (Offense: Manufacture of Delivery of Substance in Penalty Group 2 or 2-A).

The appellant (Brenes) filed a motion to suppress, which the trial court denied after a hearing. *See* RR, Vol. 1, pg. 119. Consistent with a plea bargain agreement, the trial court subsequently found Brenes guilty of the felony offenses in both counts and sentenced him "to 20 years in TDC" in count one and "to 25 years in TDC" in count two. *See* RR, Vol. 2, pg. 9.

From two (2) separate final judgments of conviction in both counts (CR, pgs. 99-100; 100-101), the appellant filed his notice of appeal. *See* CR, pg. 96. By this appeal, Brenes brings four (4) issues/points of error.

# STATEMENT REGARDING ORAL ARGUMENT

The State of Texas will waive oral argument. *See* Tex. R. App. P. 38.1(e), 38.2(a)(1).

# ISSUES/POINTS OF ERROR PRESENTED IN REPLY

**ISSUE/POINT OF ERROR IN REPLY NO. 1:** THE TRIAL COURT DID NOT ERR IN ADJUDGING THE APPELLANT GUILTY OF POSSESSION WITH INTENT TO DELIVER A CONTROLLED SUBSTANCE, NAMELY, "ECSTASY OR METHYLENDIOXY METHAMPHETAMINE," AS ALLEGED IN THE INDICTMENT BECAUSE BRENES COULD NOT ESTABLISH THE VOID JUDGMENT EXCEPTION.

**ISSUE/POINT OF ERROR IN REPLY NO. 2:** ASSUMING THE APPELLANT PRESERVED ERROR, THE TRIAL COURT DID NOT ERR IN SENTENCING THE APPELLANT WITHIN THE APPLICABLE RANGE OF PUNISHMENT FOR A FIRST DEGREE FELONY.

**ISSUE/POINT OF ERROR IN REPLY NO. 3:** THE TRIAL COURT DID NOT ERR IN DENYING THE APPELLANT'S MOTION TO SUPPRESS AND IN CONCLUDING THAT THE SEARCH OF THE APPELLANT'S VEHICLE WAS LAWFUL BECAUSE ONCE PROBABLE CAUSE WAS ESTABLISHED, THE OFFICERS COULD SEARCH THE APPELLANT'S VEHICLE WITHOUT A WARRANT.

**ISSUE/POINT OF ERROR IN REPLY NO. 4:** THE TRIAL COURT DID NOT ERR IN ACCEPTING THE APPELLANT'S GUILTY PLEA BECAUSE BRENES WAIVED ANY COMPLAINT AS TO THE ADMISSIBILITY OF HIS RECORDED STATEMENT BY FAILING TO SPECIFICALLY OBJECT ON THE BASIS OF ARTICLE 38.22 OF THE TEXAS CODE OF CRIMINAL PROCEDURE; ALTERNATIVELY, THE APPELLANT (BRENES) COULD NOT SHOW ANY HARM.

CAUSE NO. 06-15-00108-CR

IN THE

COURT OF APPEALS

SIXTH APPELLATE DISTRICT OF TEXAS AT TEXARKANA
_____

ALEXANDER NATHANIEL BRENES, Appellant

V.

THE STATE OF TEXAS, Appellee
_____

ON APPEAL FROM THE 6TH DISTRICT COURT;
LAMAR COUNTY, TEXAS; TRIAL COURT CAUSE NO. 23814;
HONORABLE WILLIAM "BILL" HARRIS, JUDGE
_____

# APPELLEE'S (STATE'S) BRIEF
_____

TO THE HONORABLE SIXTH COURT OF APPEALS:

COMES NOW, the State of Texas, by and through the County and

District Attorney's Office of Lamar County, files this its Appellee's (State's)

Brief under Rule 38.2 of the Texas Rules of Appellate Procedure.

Unless otherwise indicated, the appellant will be referred to as

"Brenes" and the appellee will be referred to as "the State."

-1-

## STATEMENT OF FACTS

**Factual Background.**

In April of 2010, Leigh Foreman, a detective with the Paris Police Department, (Detective Foreman) was investigating narcotics violations at 2331 Maple in Lamar County. *See* RR, Vol. 1, pg. 13. Detective Foreman had received a phone call from Anson Amis (Amis), who was employed by the Lamar County Sheriff's Department as a narcotics investigator. *See* RR, Vol. 1, pgs. 14, 21. Amis had received information from an informant that Brenes was in Paris and was frequenting a house in the 2300 block of Maple. *See* RR, Vol. 1, pgs. 14, 21.

The house was occupied by three females: Tiffany Deaton (Deaton), Angela Langston (Langston) and April Bankston (Bankston). *See* RR, Vol. 1, pgs. 14, 66. Langston and Bankston were sisters. *See* RR, Vol. 1, pg. 77. Deaton was a tenant at the house, and she lived there. *See* RR, Vol. 1, pgs. 72, 82, 84. According to Deaton, she was "a live-in babysitter." *See* RR, Vol. 1, pg. 84.

Detective Foreman, Detective Stone and Sergeant Springer (Sergeant Springer) went to that location. *See* RR, Vol. 1, pg. 14. The officers approached the house (RR, Vol. 1, pg. 36) and made contact with Deaton,

who was alone outside the house. *See* RR, Vol. 1, pg. 37. Detective Foreman identified himself and asked who lived there. *See* RR, Vol. 1, pg. 38. The front door was open, and Detective Foreman could see other occupants in the house. *See* RR, Vol. 1, pg. 38.

Langston was in the doorway of the house. *See* RR, Vol. 1, pg. 41. When Langston said that she lived there and everyone else was visiting (RR, Vol. 1, pg. 42), the officers determined that Langston was the one that lived at the house. *See* RR, Vol. 1, pgs. 14, 38, 41. Detective Foreman asked Langston for consent to search, and she gave consent. *See* RR, Vol. 1, pgs. 14, 42, 67, 87.

The officers found a small, clear baggie of marijuana in Langston's room and the remnants of marijuana packaging in Deaton's room. *See* RR, Vol. 1, pgs. 15, 22, 67, 72, 88. According to Langston, the officers said that "it wasn't enough to worry about." *See* RR, Vol. 1, pg. 67. Detective Foreman could smell marijuana in the house and on the packaging. *See* RR, Vol. 1, pg. 15.

Detective Foreman confronted Deaton about what was found in her room (RR, Vol. 1, pg. 50), and asked her about that. *See* RR, Vol. 1, pg. 15. She told Detective Foreman that her marijuana supplier was Brenes. *See*

RR, Vol. 1, pgs. 15, 17, 22. In talking to Detective Foreman, Deaton had helped Brenes package marijuana in smaller amounts. *See* RR, Vol. 1, pg. 17. Detective Foreman asked her if she would cooperate with getting Brenes to deliver marijuana to the house. *See* RR, Vol. 1, pg. 50. Deaton agreed. *See* RR, Vol. 1, pgs. 17, 51, 89.

Deaton agreed to make a phone call or a text to Brenes in an attempt to arrange for him to deliver marijuana. *See* RR, Vol. 1, pgs. 17, 51, 89-90. Deaton also said that he'd commonly carry his contraband in a backpack. *See* RR, Vol. 1, pg. 22.

Detective Foreman was aware of Brenes because he had previously been to prison for delivery. *See* RR, Vol. 1, pg. 18. The officers had Deaton make contact with text messaging, and the "slang" text asked "if he had any green." *See* RR, Vol. 1, pg. 18. Brenes stated, "he was going to be on his way and he arrived a short time later." *See* RR, Vol. 1, pg. 19. Deaton described Brenes' vehicle as a green Toyota. *See* RR, Vol. 1, pgs. 19, 22.

Detective Foreman and Sergeant Springer remained in the house. *See* RR, Vol. 1, pg. 20. Detective Stone took a position up outside the residence to await the arrival of Brenes (RR, Vol. 1, pg. 51), and was in a marked vehicle "down the road a little bit" from the house. *See* RR, Vol. 1, pg. 20.

-4-

Brenes was on the phone, when he pulled up. *See* RR, Vol. 1, pg. 91. Brenes walked in the house, where the door had been left cracked open. *See* RR, Vol. 1, pg. 91. Detective Foreman was in the living room, hiding behind the front door. *See* RR, Vol. 1, pgs. 51-52.

Detective Foreman and Sergeant Springer detained him. *See* RR, Vol. 1, pg. 20. Sergeant Springer "cuffed" Brenes. *See* RR, Vol. 1, pg. 54. "He was in handcuffs." *See* RR, Vol. 1, pg. 58. *See also* RR, Vol. 1, pg. 92. "He was not free to go." *See* RR, Vol. 1, pg. 58. "[H]e was detained for an investigative detention." *See* RR, Vol. 1, pg. 58.

Detective Foreman asked him his name and asked him if he had marijuana. *See* RR, Vol. 1, pg. 56. Brenes said, "no." *See* RR, Vol. 1, pg. 56. Detective Foreman advised Brenes that he was going to search his vehicle for marijuana. *See* RR, Vol. 1, pg. 56. Brenes told Detective Foreman that he could not. *See* RR, Vol. 1, pg. 56.

Detective Foreman went outside to the green Toyota. *See* RR, Vol. 1, pgs. 20, 56. Detective Stone also walked out to his car. *See* RR, Vol. 1, pg. 58. The vehicle had the windows down. *See* RR, Vol. 1, pg. 20. The driver's side window was open. *See* RR, Vol. 1, pg. 58.

Detective Foreman could smell marijuana. *See* RR, Vol. 1, pg. 20. It

was a "strong smell" of marijuana.  *See* RR, Vol. 1, pg. 22.  Based on his training, Detective Foreman then searched the vehicle without a warrant.  *See* RR, Vol. 1, pgs. 20-21, 58.  Detective Forman searched the car exclusively on the odor of marijuana.  *See* RR, Vol. 1, pg. 59.  Detective Foreman "literally had no doubt that there was marijuana in the vehicle."  *See* RR, Vol. 1, pg. 22.

As a result of his search, Detective Foreman found a backpack that had baggies and scales for weighing contraband.  *See* RR, Vol. 1, pgs. 22, 59.  In the glove compartment, Detective Foreman found a baggie containing 99 tablets of ecstasy.  *See* RR, Vol. 1, pgs. 23, 59.  Sergeant Springer was the first one to search the trunk, where he found nine taped bundles.  *See* RR, Vol. 1, pgs. 23, 60.  Ultimately, the officers found almost twelve pounds of marijuana, and that's a "huge amount in Paris."  *See* RR, Vol. 1, pg. 23.

The officers arrested Brenes (RR, Vol. 1, pg. 23), and removed the cell phones from his person.  *See* RR, Vol. 1, pgs. 24-25.  Upon their initial contact with Brenes, Sergeant Springer *Mirandized* him at the scene and attempted to talk to him, but he wouldn't talk.  *See* RR, Vol. 1, pgs. 25, 28, 29-30, 33, 35, 61.  Brenes requested an attorney.  *See* RR, Vol. 1, pg. 34.

Initially, Brenes would have been jailed at the Paris Police

Department and subsequently transferred to the Lamar County jail. *See* RR, Vol. 1, pg. 32. Later, Brenes changed his attitude at the jail for the Paris Police Department. *See* RR, Vol. 1, pgs. 25, 35.

While booking him in, Detective Foreman and Brenes were "face to face" (RR, Vol. 1, pgs. 27-28), and Detective Foreman told Brenes that since he had refused to talk with Sergeant Springer, he couldn't speak with him unless he attempted to speak with Detective Foreman first. *See* RR, Vol. 1, pgs. 25-26, 33. Detective Foreman made Brenes aware of Sergeant Springer's *Miranda* warnings to him. *See* RR, Vol. 1, pg. 26. Brenes made recorded statements; in which, he confessed to being a marijuana and ecstasy dealer "to varying degrees." *See* RR, Vol. 1, pg. 26.

**Indictment of July 15, 2010.**

On July 15, 2010, a grand jury in Lamar County returned an original indictment against Brenes that charged him with felony offenses in two (2) counts: (1) possession of marijuana of fifty pounds or less but more than five pounds; and (2) possession with intent to deliver a controlled substance, namely, Ecstasy or methylendixoy methamphetamine of four grams or more but less than four hundred grams. *See* CR, pgs. 6-8. Both counts included paragraphs, which alleged that each offense was committed in a drug free

zone.[1]  *See* CR, pg. 7.

**Suppression Hearing on December 12, 2014.**

On December 12, 2014, the trial court called cause number 23814 and "[w]e're here today on the Defendant's motion to suppress."  *See* RR, Vol. 1, pg. 4.  After a preliminary discussion (RR, Vol. 1, pgs. 4-12), the State called Detective Foreman as its first witness.  *See* RR, Vol. 1, pg. 13. Following his testimony, the State rested.  *See* RR, Vol. 1, pg. 64.

Brenes presented several witnesses; and at the conclusion of their testimony, the defense rested.  *See* RR, Vol. 1, pg. 114.  Both sides then rested and closed.  *See* RR, Vol. 1, pg. 114.

After argument by counsel (RR, Vol. 1, pgs. 114-119), the trial court ruled, "I'm going to deny the motion to suppress with regards to the conduct at the house and what happened and what was seized out of the car."  *See* RR, Vol. 1, pg. 119.

**Proceedings on June 19, 2015 and Plea Bargain Agreement.**

On June 19, 2015, the trial court called cause number 23814, which had been set for a jury trial on June 29th.  *See* RR, Vol. 2, pg. 4.  During the hearing, the trial judge learned that the State and Brenes had reached a plea agreement.  *See* RR, Vol. 2, pg. 4.

---

[1] The State would later abandon the drug-free-zone allegations.  *See* RR, Vol. 2, pg. 4.

Consistent with the plea agreement, the trial court found Brenes guilty beyond a reasonable doubt and pronounced sentence. *See* RR, Vol. 2, pg. 9. In count one, the trial court sentenced Brenes "to 20 years in TDC, and I'll note for the record that the drug-free zone has been abandoned in that count." *See* RR, Vol. 2, pg. 9. In count two, the trial court sentenced Brenes "to 25 years in TDC, and, again, I'll note for the record that the drug-free zone allegation has been abandoned." *See* RR, Vol. 2, pg. 9.

On June 19th, the trial court signed separate Judgments of Conviction by Court--Waiver of Jury Trial as to count one (CR, pgs. 99-100) and count two. *See* CR, pgs. 101-102. On the same day, the trial court signed its Certification of the Defendant's Right of Appeal (CR, pg. 94), and Brenes filed his notice of appeal. *See* CR, pg. 96.

**Proceedings in this Court of Appeals.**

On or about June 25th, Brenes, the appellant, filed his notice of appeal in this Court. By electronic filing or about August 25th, the District Clerk of Lamar County filed the Clerk's Record. The official court reporter filed the Reporter's Record on or about August 31, 2015. On or about September 14, 2015, the District Clerk filed a supplemental Clerk's Record.

As the due date for the appellant's brief approached, Brenes filed a

-9-

motion to extend time to file his brief, which this Court granted on or about September 15, 2015. Brenes then filed his brief on October 20, 2015.

On November 19th, the State filed its motion to extend time to file its brief, which this Court granted until December 18, 2015. The State will be filing its brief and a second motion to extend time until December 23rd.

## SUMMARY OF THE ARGUMENT

In summary, the appellant's four (4) issues/points of error should be overruled for the following reasons:

(1) The trial court did not err in adjudging Brenes guilty in count two because Brenes could not establish the void judgment exception. The typographical error in the exact scientific name of the compound ("3,4-methylendioxy methamphetamine") was not sufficient to deprive Brenes or notice, or to deprive the trial court of jurisdiction.

(2) Assuming the appellant preserved error, the trial court did not err in sentencing the appellant in count two "to 25 years in TDC" because it was within the applicable range of punishment for a first degree felony.

(3) The trial court did not err in denying the appellant's motion to suppress because once probable cause was sufficiently established, the officers could search the appellant's vehicle without a warrant.

-10-

(4)     Finally, the trial court did not err in accepting the appellant's guilty plea because Brenes waived any complaint as to the admissibility of his recorded statement by failing to object.  In the alternative, Brenes could not show any harm.  For these reasons, the final judgments of conviction should be affirmed in both counts.  *See* CR, pgs. 99-100; 101-102.

## ARGUMENT AND AUTHORITIES

**ISSUE/POINT OF ERROR IN REPLY NO. 1:   THE TRIAL COURT DID NOT ERR IN ADJUDGING THE APPELLANT GUILTY OF POSSESSION WITH INTENT TO DELIVER A CONTROLLED SUBSTANCE, NAMELY, "ECSTASY OR METHYLENDIOXY METHAMPHETAMINE," AS ALLEGED IN THE INDICTMENT BECAUSE BRENES COULD NOT ESTABLISH THE VOID JUDGMENT EXCEPTION.**

A.     **Introduction.**

With his first issue/point of error, Brenes alleged that his conviction, as alleged in count two (CR, pg. 7), was void because neither "Ecstasy" nor "Methylendioxy methamphetamine" were listed in chapter 481 of the Texas Health and Safety Code.  *See* Appellant's Brief, pgs. 24-26.  According to Brenes, his conviction should be declared a nullity, and he is allegedly entitled to immediate relief.  *See* Appellant's Brief, pgs. 24, 26.

B.     **Standard of Review:  Void Judgment.**

A void judgment is a "nullity" and can be attacked at any time.  *See*

*Nix v. State*, 65 S.W.3d 664, 667-68 (Tex. Crim. App. 2001) (citing *Ex parte Patterson*, 969 S.W.2d 16, 19 (Tex. Crim. App. 1998)). The void judgment exception has recognized some rare situations, in which a trial court's judgment is accorded no respect due to a complete lack of power to render the judgment in question. *See Hill v. State*, 440 S.W.3d 670, 676 (Tex. App.--Tyler 2012, no pet.) (citing *Nix*, 65 S.W.3d at 667). A judgment of conviction for a crime is void only when (1) the document purporting to be a charging instrument (i.e. indictment, information, or complaint) does not satisfy the constitutional requisites of a charging instrument, and thus, the trial court has no jurisdiction over the defendant, (2) the trial court lacks subject matter jurisdiction over the offense charged, such as when a misdemeanor involving official misconduct is tried in a county court at law, (3) the record reflects that there is no evidence to support the conviction, or (4) an indigent defendant is required to face criminal trial proceedings without appointed counsel when the right to counsel has not been waived. *See id* (citing *Nix*, 65 S.W.3d at 668). A guilty plea is some evidence to support a conviction. *See id* (citing *Nix*, 65 S.W.3d at 668 n. 14).

C.   **The Judgment of Conviction for Count 2 Was Not Void.**

In the present case, the trial court's judgment of conviction for count 2

-12-

was not void because this Court rejected a similar argument in *Joshua David Stevens v. The State of Texas*, No. 06-05-00235-CR, 2006 Tex. App. LEXIS 3671 (Tex. App.--Texarkana May 2, 2006, pet. ref'd) (mem. op., not designated for publication) (Carter, J.).  In *Stevens*, an unpublished opinion, the appellant argued that the trial court lacked jurisdiction because the indictment was so defective as to be a non-indictment.  *See id.*, 2006 Tex. App. LEXIS 3671, at * 3-4.

In *Stevens*, the indictment alleged a compound (3,4-methyldioxy methamphetamine) that was misspelled and, thus, was not listed in the Texas Controlled Substances Act.  *See id.*, 2006 Tex. App. LEXIS 3671, at * 4.  In *Stevens*, the compound in the Texas Health and Safety Code contained the letters "ene," which were not included in the indictment that formed the basis for the appellant's conviction.  *See id.*  Thus, the issue in *Stevens* was whether the omission of the letters "ene" prevented the charging instrument from describing the crime with enough clarity and specificity to identify the relevant penal statute.  *See id.*, 2006 Tex. App. LEXIS 3671, at * 7.

In *Stevens*, this Court resolved that although the indictment misspelled the scientific name of the controlled substance, the indictment provided sufficient notice to the defendant.  *See id.*, 2006 Tex. App. LEXIS 3671, at *

8. In general, this Court reasoned that the mere misspelling of a name did not prevent an indictment from alleging an offense, provided the indictment nevertheless provided the necessary notice of the statutory offense. *See id*. In *Stevens*, this Court further reasoned that:

> Given the similarity between the names of the compounds and that the indictment clearly provides Stevens was accused of delivery of a controlled substance, no reasonable person would have been confused that the State was alleging delivery of a controlled substance listed in penalty group 2 of the Texas Controlled Substances Act. Such a conclusion is particularly true when one considers that scientific names appear excessively complex to most laymen. The indictment, even with the misspelled word, accused Stevens of a crime with enough clarity and specificity to identify the penal statute under which the State intended to prosecute. As such, Stevens was not deprived of the screening function of a grand jury. The typographical error in the spelling of the scientific name of the compound is not sufficient to deprive Stevens notice of the crime of which he was accused or to deprive the trial court of jurisdiction.

*Id*., 2006 Tex. App. LEXIS 3671, at * 8-9 (reference to footnote omitted).

In applying the *Stevens* rationale to the allegations in count 2 (CR, pg. 7), the mere misspelling of a scientific name did not prevent the indictment from alleging an offense. *See id*, 2006 Tex. App. LEXIS 3671, at * 8. In the present case, the State's indictment omitted the numbers "3,4-" before the precise name of the scientific compound in section 481.103(a) of the Texas Health and Safety Code Annotated. *See State v. Mazuca*, 375 S.W.3d 294,

296 n. 2 (Tex. Crim. App. 2012) ("Penalty Group 2 consists of [*inter alia*] 3,4-methylendioxy methamphetamine"), *cert. denied*, ___ U.S. ___, 133 S.Ct. 1724, 185 L.Ed.2d 789 (2013). But, this omission was not fatal.

Here, as in *Stevens*, no reasonable person would have been confused that the State was alleging delivery of a controlled substance listed in penalty group 2 of the Texas Controlled Substances Act. *See Stevens*, 2006 Tex. App. LEXIS 3671, at * 9. The indictment, even with the missing "3,4-" missing numbers, accused Brenes of a crime with enough clarity and specificity to identify the penal statute under which the State intended to prosecute. *See id*; CR, pg. 6. The typographical error in the exact scientific name of the compound was not sufficient to deprive Brenes notice of the crime of which he was accused, or to deprive the trial court of jurisdiction. *See id*.

Based on the rationale expressed above, Brenes could not prove the void judgment exception. Therefore, the appellant's first issue/point of error should be overruled.

**ISSUE/POINT OF ERROR IN REPLY NO. 2:** **ASSUMING THE APPELLANT PRESERVED ERROR, THE TRIAL COURT DID NOT ERR IN SENTENCING THE APPELLANT WITHIN THE APPLICABLE RANGE OF PUNISHMENT FOR A FIRST DEGREE FELONY.**

A. **Introduction.**

With his second issue, Brenes alleged that his sentences were illegal, and that he should be entitled to have his plea bargain set aside and/or to withdraw his guilty plea. *See* Appellant's Brief, pgs. 28-41. In the present case, the appellant's entire argument on appeal did not comport with any objection during the proceedings in the trial court on June 19, 2015. *See* Tex. R. App. P. 33.1(a). Also, the appellant's motion for new trial (CR, pgs. 116-117) did not specifically object to illegal sentences, if any. *See* Tex. R. App. P. 33.1(a).

However, "[a] trial or appellate court which otherwise has jurisdiction over a criminal conviction may always notice and correct an illegal sentence." *See Mizell v. State*, 119 S.W.3d 804, 806 n. 6 (Tex. Crim. App. 2003) (citing *Ex parte Pena*, 71 S.W.3d 336, 336-37 n. 1 (Tex. Crim. App. 2002)). Thus, the State will respond to the appellant's complaint(s).

B. **In the Present Case, the State's Indictment Alleged a First Degree Felony in Count Two, Regardless of the Other Allegations.**

In the present case, the State's indictment alleged a first degree felony

-16-

in count two. *See* CR, pg. 7; *Mazuca*, 375 S.W.3d at 296 ("[t]he appellee was indicted for the offense of possession with intent to deliver more than four but less than 400 grams of methylenedioxy methamphetamine, popularly known as ecstasy, a first degree felony offense."). Regardless of the enhancement paragraph or the drug-free-zone allegations that the State eventually waived or abandoned (RR, Vol. 2, pg. 4), the State's indictment alleged a first degree felony, not a lesser-degree of felony. The State's indictment specifically identified section 481.113 of the Texas Health & Safety Code. *See* CR, pg. 6.

Subsection (d) in section 481.113 of the Texas Health and Safety Code Annotated provided that "[a]n offense under Subsection (a) is a felony of the first degree if the amount of the controlled substance to which the offense applies is, by aggregate weight, including adulterants or dilutants, four grams or more but less than 400 grams." *See* Tex. Health & Safety Code Ann. § 481.113(d) (West 2006). As a first-degree felony, the punishment range for this offense was incarceration for life or a term of five to 99 years, and a fine of up to $ 10,000. *See* Tex. Penal Code Ann. § 12.32 (West 2006).

C.    **At the Time of Accepting the Appellant's Plea, the Trial Court Pronounced the Correct Range of Punishment.**

At the time of the appellant's plea on June 19th, the trial court pronounced the following:

> In count two you're charged with possession with intent to deliver a controlled substance, more commonly known as ecstasy, four grams but less than 400 grams. That is a first-degree felony -- excuse me -- as a repeat offender. Carries with it a range of punishment of up to life or 99 years in prison and a $10,000 fine.
>
> Mr. Brenes, do you understand what you're charged with and the range of punishment in each of these counts?
>
> THE DEFENDANT: Yes, Your Honor.

*See* RR, Vol. 2, pgs. 5-6.

Later, the trial court accepted the appellant's pleas of "guilty" and "true" and found Brenes guilty beyond a reasonable doubt. *See* RR, Vol. 2, pgs. 8-9. The trial court sentenced Brenes in count 2 to "25 years in TDC, and, again, I'll note for the record that the drug-free zone allegation has been abandoned." *See* RR, Vol. 2, pg. 9.

In conclusion, the trial court's sentence of 25 years was within a term of five to 99 years, which was the applicable range of punishment for a first degree felony. *See* Tex. Penal Code Ann. § 12.32 (West 2006). So, the trial court's sentence was not illegal, and the appellant's second issue/point of

-18-

error should be overruled.

**ISSUE/POINT OF ERROR IN REPLY NO. 3:** THE TRIAL COURT DID NOT ERR IN DENYING THE APPELLANT'S MOTION TO SUPPRESS AND IN CONCLUDING THAT THE SEARCH OF THE APPELLANT'S VEHICLE WAS LAWFUL BECAUSE ONCE PROBABLE CAUSE WAS ESTABLISHED, THE OFFICERS COULD SEARCH THE APPELLANT'S VEHICLE WITHOUT A WARRANT.

A. **Standard of Review: Motion to Suppress.**

This Court reviews a trial court's decision on a motion to suppress evidence by applying a bifurcated standard of review. *See Graves v. State*, 307 S.W.3d 483, 489 (Tex. App.--Texarkana 2010, pet. ref'd).; *Rogers v. State*, 291 S.W.3d 148, 151 (Tex. App.--Texarkana 2009, pet. ref'd). Because the trial court is the exclusive trier of fact and judge of witness credibility at a suppression hearing, this Court affords almost total deference to its determination of facts supported by the record. *See State v. Ross*, 32 S.W.3d 853, 856-57 (Tex. Crim. App. 2000); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). This Court affords the same deference to a trial court's rulings on mixed questions of law and fact if the resolution of those questions turns on an evaluation of credibility and demeanor. *See Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996).

This Court reviews *de novo* the trial court's application of the law and

determination of questions not turning on credibility. *See Carmouche*, 10 S.W.3d at 327; *Guzman*, 955 S.W.2d at 89. Since all the evidence is viewed in the light most favorable to the trial court's ruling, this Court is obligated to uphold the denial of the appellant's motion to suppress if it was supported by the record and was correct under any theory of law applicable to the case. *See Carmouche*, 10 S.W.3d at 327; *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999). The trial court's evidentiary ruling "will be upheld on appeal if it is correct on any theory of law that finds support in the record." *See Flowers v. State*, 438 S.W.3d 86, 107 (Tex. App.--Texarkana 2014, pet. ref'd) (citing *Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex. Crim. App. 2006); *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990)).

B. **Application of the Standard of Review to the Present Case.**

1. **Using a False Pretense, Namely, an Orchestrated Entreaty.**

a. **Brenes Waived this Argument, On Appeal.**

Initially, Brenes complained that the police gained access to his vehicle by "using a false pretense, namely, an orchestrated entreaty by Appellant's acquaintance to come to the residence and bring her some marijuana." *See* Appellant's Brief, pgs. 45-46. If a "false pretense" was alleged to have induced the commission of a crime, that argument should

have been made in the trial court below in order to comport with the argument on appeal. *See* Tex. R. App. P. 33.1(a). But, that was not the case here, and Brenes has waived his complaint(s) on appeal. *See id.*

b. **If Applicable, the Defense of Entrapment Was Not Raised.**

Assuming the alleged "false pretense" and "orchestrated entreaty" through police conduct actually induced Brenes to commit this felony offense, the defense of entrapment required the accused to produce evidence that he was actually induced to commit the charged offense; that is to say, that he committed the offense "because he was induced to do so." *See England v. State*, 887 S.W.2d 902, 913 (Tex. Crim. App. 1994); Tex. Penal Code Ann. § 8.06 (West 2011). But again, that defense was not raised in the trial court below. *See* Tex. R. App. P. 33.1(a).

2. **Brenes Had No Reasonable Expectation of Privacy in What He Knowingly Exposed in Langston's Home, or in What Deaton Might Reveal.**

In *Katz v. United States*, 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967), the United States Supreme Court observed that "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *See id.* at 351. Further, the Fourth Amendment does not protect "a wrongdoer's misplaced belief that a

-21-

person to whom he voluntarily confides his wrongdoing will not reveal it." *See Hoffa v. United States*, 385 U.S. 293, 302; 87 S. Ct. 408; 17 L. Ed. 2d 374 (1966). *See also People v. Catania*, 427 Mich. 447, 465-66; 398 N.W.2d 343, 351-52 (1986).

After Detective Foreman asked Langston for consent to search, which she gave (RR, Vol. 1, pgs. 14, 42, 67, 87), the officers found the remnants of marijuana packaging in Deaton's room. *See* RR, Vol. 1, pgs. 15, 22, 67, 72, 88. When Detective Foreman confronted Deaton about what was found in her room (RR, Vol. 1, pg. 50), Deaton told him that "Brenes was her marijuana supplier. He had brought marijuana to that location, 2331, the previous date." *See* RR, Vol. 1, pg. 17; CR, pg. 106 (finding of fact # 8). Thus, previously, Brenes had "voluntarily confided his wrongdoing" to Deaton, who later revealed that "[s]he had helped him package marijuana in smaller amounts." *See* RR, Vol. 1, pg. 17; CR, pg. 106 (finding of fact # 8).

In addition to "voluntarily confid[ing] his wrongdoing," Brenes had no reasonable expectation of privacy in what he knowingly exposed to the public in Langston's home or office. *See Katz*, 389 U.S. at 351. Further, the Fourth Amendment did not, and would not, protect the appellant's misplaced belief that Deaton would not reveal his previous wrongdoing to the police.

*See Hoffa*, 385 U.S. at 302.

Accordingly, the trial court did not err in denying the appellant's motion to suppress because Brenes had no reasonable expectation of privacy in what he knowingly exposed in Langston's home, or in what Deaton might reveal about his previous wrongdoing. *See id.* Thus, the appellant's argument as to "false pretense" or "orchestrated entreaty" should be rejected. *See id.*

3. **Once Probable Cause Was Established, Detective Foreman Could Search the Green Toyota Without a Warrant.**

In his brief, Brenes alleged that no exception to the warrant requirement was shown in this case. *See* Appellant's Brief, pgs. 42, 44. As the trial court concluded (CR, pg. 111), however, "[a] vehicle lawfully in police custody may be searched on the basis of probable cause to believe that it contains contraband, and there is no requirement of exigent circumstances to justify such a warrantless search." *See State v. Guzman*, 959 S.W.2d 631, 634 (Tex. Crim. App. 1998) (quoting *United States v. Johns*, 469 U.S. 478, 484; 105 S.Ct. 881, 83 L.Ed.2d 890 (1985)).

"There is no requirement that the warrantless search of a vehicle occur contemporaneously with its lawful seizure." *See Johns*, 469 U.S. at 484. So, a warrantless search of the green Toyota could occur before a lawful

seizure. *See id.*

"[T]he police may lawfully search an automobile if they have probable cause to believe that the vehicle contains evidence of a crime." *See Neal v. State*, 256 S.W.3d 264, 282 (Tex. Crim. App. 2008), *cert. denied*, 555 U.S. 1154, 129 S.Ct. 1037, 173 L.Ed.2d 471 (2009). "Once probable cause to believe that the car contained evidence of a crime was established, the officers could conduct a valid search of the car immediately, without a warrant." *See Amos v. State*, 819 S.W.2d 156, 161 (Tex. Crim. App. 1991), *cert. denied*, 504 U.S. 917, 112 S.Ct. 1959, 118 L.Ed.2d 561 (1992). Probable cause to search exists when there is a "fair probability" of finding inculpatory evidence at the location being searched. *See Neal*, 256 S.W.3d at 282.

The odor of marijuana alone was sufficient to constitute probable cause to search a defendant's person, vehicle or objects within the vehicle. *See*, *e.g.*, *Harris v. State*, 468 S.W.3d 248, 255 (Tex. App.--Texarkana 2015, no pet.); *Hitchcock v. State*, 118 S.W.3d 844, 851 (Tex. App.--Texarkana 2003, pet. ref'd); *Hernandez v. State*, 867 S.W. 900, 907 (Tex. App.--Texarkana 1993, no pet.).

Analysis of probable cause is based on a "totality of the

circumstances" test. *See Gant v. State*, 116 S.W.3d 124, 134 (Tex. App.--Tyler 2003, pet. ref'd). In order to temporarily detain an individual for investigation, an officer need only articulate specific facts which, taken together with rational inferences from those facts, give rise to a reasonable suspicion of criminally related activity. *See id*. at 134-35.

In the present case, Detective Foreman articulated specific facts that were known to him prior to the appellant's arrival at Langston's home. *See id*; CR, pgs. 109-110 (conclusion of law # 10, i through x). Based on those specific facts, which were corroborated when Brenes then pulled up in a green Toyota (RR, Vol. 1, pgs. 19, 22, 91), Detective Foreman had developed reasonable suspicion of criminally related activity. *See Gant*, 116 S.W.3d at 134-35. While Brenes was lawfully detained, as the trial court concluded (CR, pg. 108), Detective Foreman testified that he went outside to the green Toyota, and the vehicle had the driver's side window open. *See* RR, Vol. 1, pgs. 20, 58. Detective Foreman could smell marijuana (RR, Vol. 1, pg. 20), which he described as a "strong smell." *See* RR, Vol. 1, pg. 22. Based on his training, Detective Foreman then searched the vehicle without a warrant. *See* RR, Vol. 1, pgs. 20-21, 58.

Based on the totality of the circumstances, including the smell of

marijuana, probable cause existed to search the appellant's vehicle without a warrant. *See Gant*, 116 S.W.3d at 134-35; *Harris*, 468 S.W.3d at 255; *Hitchcock*, 118 S.W.3d at 851; *Hernandez*, 867 S.W. at 907. Once probable cause existed, Detective Foreman could conduct a valid search of the car immediately, without a warrant. *See Amos*, 819 S.W.2d at 161.

Because sufficient probable cause existed, the trial court did not err in concluding that the search of the appellant's vehicle was lawful. *See* CR, pg. 111 (conclusion of law # 17). Accordingly, the trial court did not err in denying the appellant's motion to suppress, and the appellant's third issue/point of error should be overruled.

**ISSUE/POINT OF ERROR IN REPLY NO. 4: THE TRIAL COURT DID NOT ERR IN ACCEPTING THE APPELLANT'S GUILTY PLEA BECAUSE BRENES WAIVED ANY COMPLAINT AS TO THE ADMISSIBILITY OF HIS RECORDED STATEMENT BY FAILING TO SPECIFICALLY OBJECT ON THE BASIS OF ARTICLE 38.22 OF THE TEXAS CODE OF CRIMINAL PROCEDURE; ALTERNATIVELY, THE APPELLANT (BRENES) COULD NOT SHOW ANY HARM.**

A. **Introduction.**

With his final issue/point of error, Brenes alleged that the trial court erred in accepting his guilty plea without first ruling that the recording of his statement at the Paris Police Department was inadmissible. *See* Appellant's Brief, pgs. 60, *et. seq.* In this regard, however, Brenes waived any complaint

as to the admissibility of his recorded statement by failing to specifically object on the basis of article 38.22 of the Texas Code of Criminal Procedure. *See* Tex. R. App. P. 33.1(a).

B.  **The Failure to Object Constituted a Waiver of Any Error.**

In *Pina v. State*, 38 S.W.3d 730 (Tex. App.--Texarkana 2001, pet. ref'd), a murder case involving "statements" under article 38.22, this Court held the following:

> In order to complain of an error in admitting evidence offered by the State, the defendant must preserve his claimed error by timely and properly objecting and obtaining a ruling from the court on the objection. The defendant must state specifically the basis for the objection unless the particular ground is apparent from the context. *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991). The objection must be made at the earliest opportunity, and the point of error on appeal must correspond to the objection raised at trial. *Martinez v. State*, 867 S.W.2d 30, 35 (Tex. Crim. App. 1993). Defense counsel did not object to Warren's earlier testimony on the Article 38.22 grounds that are raised in this appeal. This failure to object at the first opportunity constitute a waiver of the error.

*See Pina*, 38 S.W.3d at 736.

As in *Pina*, any specific objection on the basis of article 38.22 of the Texas Code of Criminal Procedure was not made at the earliest opportunity by Brenes. *See Pina*, 38 S.W.3d at 736. Also, the appellant's fourth and final issue/point of error did not correspond to any objection raised at trial.

*See id*. Even if Brenes had timely and specifically objected, he did not re-assert that objection at the time of his guilty plea on June 19, 2015. *See generally* RR, Vol. 2, pgs. 4-9.

C.     **Harmless Error.**

Even assuming a violation of article 38.22 of the Texas Code of Criminal Procedure, Brenes could not show any harm. *See* Tex. R. App. P. 44.2(b).    In his brief, Brenes contended that "[i]f this Court decides to remand this case for trial, then it should provide the necessary guidance on the issue so that error does not creep back into the case[,] [and] [t]he State may otherwise decide to withdraw its concession." *See* Appellant's Brief, pg. 62.

During the June 19th hearing, however, the trial court specifically ruled that "the State has forever abandoned the use of the Defendant's statement to Leigh Foreman in any capacity, and that the State will not file any bail jumping or failure to appear charges against the Defendant." *See* RR, Vol. 2, pgs. 9-10.   So, Brenes could not show any harm as to the recording of his statement at the Paris Police Department because the State had "forever abandoned" the use of the statement "in any capacity." *See* RR, Vol. 2, pgs. 9-10.

In the further alternative, Brenes could not show any harm because there was sufficient evidence of the appellant's guilt without the use of any recorded statement. For the reasons above, Brenes could not show any harm, and the appellant's final issue/point of error should be overruled.

PRAYER

WHEREFORE, PREMISES CONSIDERED, the State of Texas prays that upon final submission of the above-styled and numbered cause without oral argument, this Court affirm the trial court's final judgment of conviction in all respects; adjudge court costs against the appellant; and for such other and further relief, both at law and in equity, to which it may be justly and legally entitled.

Respectfully submitted,

Gary D. Young
Lamar County & District Attorney
Lamar County Courthouse
119 North Main
Paris, Texas   75460
(903) 737-2470
(903) 737-2455 (fax)

By:_____
      Gary D. Young, County Attorney
SBN# 00785298
gyoung@co.lamar.tx.us

**ATTORNEYS FOR THE STATE OF TEXAS**

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9.4(i)(3) of the Texas Rules of Appellate Procedure, the "Appellee's (State's) Brief" was a computer-generated document and contained 7799 words--not including the Appendix, if any. The undersigned attorney certified that he relied on the word count of the computer program, which was used to prepare this document.

_____
GARY D. YOUNG
gyoung@co.lamar.tx.us

## CERTIFICATE OF SERVICE

This is to certify that in accordance with Tex. R. App. P. 9.5, a true copy of the Appellee's (State's) Brief has been served on the 23rd day of December, 2015 upon the following:

Michael Mowla
445 E. FM 1382, No. 3-718
Cedar Hill, TX   75104
michael@mowlalaw.com

_____
GARY D. YOUNG
gyoung@co.lamar.tx.us